The next matter, number 161599, Rafael Pabon-Ortega v. Isabel Llompart-Zeno. Thank you, sir. May it please the court, Attorney Carlos del Valle, on behalf of the appellant. In this appeal, we argue- Sure. Just this last Friday, the appellant here filed his petition for certiorari before the Supreme Court of Puerto Rico. Do you understand that the Court of Appeals decided the First Amendment issue or not? I understand that it was submitted to them. Whether they decided it under merits, I'm not certain, Your Honor. I'm not the attorney handling the case in the Court of Appeals in Puerto Rico. Yeah, it wasn't- They mentioned that it was raised, but in the decision, they don't mention it being decided, so it's hard for me to tell. As far as I know, it was barely covered by the Court of Appeals in Puerto Rico. Is the petition to the Puerto Rican Supreme Court, does that raise the First Amendment issue? It does, yes, Your Honor. It does. Okay. Thank you very much. Well, going on that point, Your Honor, it is our belief that the district court erred on two grounds. Basically, because they abstained and dismissed the case on abstention on younger abstention grounds. And it's pretty clear by now that abstention does not apply in this type of cases where you only have a personal review proceeding in the state courts. A line of cases like this circuit starting with Ted Caddo in 1998, Guillermo in 2009, Casiano in 2013. Well, they concede that younger doesn't apply. The government concedes that. They do. Yes, so you don't have to spend too much time on it. I won't. Okay. But it is part of my argument that the district court does not discharge its duty to hear the preliminary injunction. And part of the argument is that the dismissal was so frivolous and so hasty because the hearing was set for May 10th. The government filed a motion on May 8th and on the night of May 8th, which is Mother's Day. And by Monday, by the next day, the district court already dismissed the preliminary injunction, the complaint. So our argument is that there has been not a discharge of judicial functions and, therefore, that you're entitled to hear the First Amendment preliminary injunction on your own. You would be happy if we decided the First Amendment issue one way or the other. We would. We think this court is more prepared to do it. And we're concerned that our client is very much affected. As you know, he went into bankruptcy court under the Puerto Rico law. He's not allowed to practice as a mediator anymore in Puerto Rico. And, therefore, he is not with a fitting capacity to work. And so far as you're able to do, to issue a preliminary injunction, at least it will preserve his employment and his means of gaining employment on the merits either by the lower circuit or by the Puerto Rico court. It would seem as though you've got a hard row to hoe on the First Amendment issue. These blog posts don't really seem to speak to an issue of public concern, do they? Well, I think to the contrary, Your Honor. As you all know, Puerto Rico is going through a very difficult period where there is a social, economic implosion as a result of the death of the Commonwealth. And his narratives are basically fictional narratives. There's no controversy over that concerning people that have been evicted, that have been an object of foreclosure, people who are suffering from mental problems, people who have issues over who is going to be the lady of the drug lord. What's he saying about that in the blog post? I mean, it doesn't seem to me that he's really addressing a public issue. He may be writing fictional blogs that have some relationship to a public issue, but how is he advocating on a public issue? Well, I would submit that those suspicions are protected by the First Amendment. I mean, they fall within the political – That may be, but that's not the Pickering test, right? Well, the Pickering test might come into if he's critical of the government employer. And here there's no indication that those blogs are critical of the government employer. None of those publications are disloyal to the supervisor or to the superiors, which is one of the criteria. None of them impede the efficient operation of the job performance. None of them interfere with the regular operations of the workplace. That may or may not be true, but he still has to be speaking to a public issue, and then only if he is do you get the balancing test of weighing the disruption that would follow. Yeah, but I interpret that the public issue, when you examine it, in the context form and context of where it's being handled, this is like a new public sphere, which is the Internet, the social media. So the idea for determining whether it is a matter of public concern we're speaking in, this new type of public sphere, is different than maybe the traditional media. You will see that the sociologists and theorists that we cite in our brief basically say that participation in the social media per se is a kind of new democratic activity because it activates in the aggregate a new form of interchange that is necessary for the development of personality and the taking of collective decisions. And all his blogs are concerned with the social economic conditions of Puerto Rico, and that is a public concern. I mean, it might not be a public concern directly tied. It is tangential, as the court would say in Pickering, only tangential to his employment because it doesn't have to do with the judicial branch per se. It has to do with people who are suffering the effects of the implosion of Puerto Rican society after the case of Sanchez v. Valle, after the end of the Commonwealth. And we make him a point of it that the timing of this seems to have been after he makes a blog on March 25th criticizing, mocking a speech by the governor of Puerto Rico. And immediately, months later, the investigation starts with respect to his blogging that he started doing in 2006 according to paragraph 20 of the complaint. So I respectfully submit that to the contrary, this is the traditional posting of public, of fictional chronicles of what's going on in society in a new medium, which is the digital public sphere. I would like to bring the attention to the court that the AOT basically concedes as much. If you examine their termination letter at page four, they basically say that they concede that this is a fictional narrative that's unrelated to any actual case or to any actual client being faced by the employee. But their theory is that insofar as it depicts situations that are similar to those that are being handled by mediators in their cases or in the dynamics, that that by itself makes it relate to the job performance. And our submission is that that criteria is just too lax because there is no direct criticism of any person, of any fellow employee, there's no grievance by any public person, by any clientele, by any fellow employee. There's no supervisory evaluation ever criticizing him for this job. So there's no link directly saying that this impedes the performance of this job or interferes with the regular operations of the workplace. The criteria on the background are not met. Maybe that the public read these blogs that they might think that their client is sort of contemptuous of the people who are taking advantage of the mediation services. Well, I think this case is controlled by Reno versus ACLA, you know, where the court declared that the statute was subconstitutional insofar as it prohibited patently offensive or patently indecent communications. If anything, what the AOCA, what the APLEI objects is not directly interference with the jobs because there's no evidence of this. It is the type of judicial person, the person that they believe should hold, should be a judicial employee. And I think that their conception of what should be a proper judicial employee is not related to what Pickering requires in order to fire a person. That would be our contention, that they're trying to contour what type of persons they want and what type of speech that person may do in their own free time. But this is not critical of the workplace operations or the job performance. I thank you for your time and your attention. Thank you. May it please the court, Margarita Mercado on behalf of APLEI, John Parceno, and the Office of the Court's Administration. I will begin by stating our argument that this court should uphold this abstention-based stay on the alternate ground of Colorado River abstention. We believe that the case presents the extraordinary circumstances that render applicable this exceptional abstention. That is particularly because of the claims that are litigated both in the Commonwealth Court and in the Federal Court. The relief, particularly the interlocutory injunctive relief that plaintiff-appellant seeks to obtain from this court, all the while the Intermediate Court of Appeals of Puerto Rico denied reinstatement on the merits after considering appellant's judicial review petition for judicial review. Why isn't that waived? I'm sorry? Why isn't that argument waived? Our argument on abstention, you mean? Colorado, yes. Yeah, this court has previously held that it can consider su responde at the alternate basis of Colorado River abstention. Our motion below was definitely geared on younger abstention, and that's what the district court held. But the premise behind our motion for stay was the duplicative litigation in both jurisdictions that could render harm to the appellee in the sense that it could be subject to different relief or decisions in both courts, and the fact that appellant was seeking precisely reinstatement in both courts. So we do believe that this court can affirm on this alternate basis, and it has done so su responde in the Jimenez case. You were wrong on younger abstention, right? We can see that below, given the recent Castellano decision that was authored by Judge Howard, that this type of proceedings is not the type of court proceeding that this circuit has stated that engenders a younger abstention. So that is why on appeal, we pose the alternate ground for abstention, given the circumstances of this case and the advanced stage of the proceedings in the Commonwealth Court, where we have a decision of the- Did the Court of Appeal decide the First Amendment issue? Well, the court did consider- Wait, wait, wait. I'm sorry. It's hard for me to read the Court of Appeal decision as having addressed the First Amendment issue when they don't discuss it at all. I do concede that they don't cite or do the picker explicitly, the pickering balance or cite to Connick or to the First Amendment, the basis for a First Amendment claim, but they do uphold the decision by the board that did consider the issues, and they do say in page 21 of the translation, which is the last page of the opinion of the Commonwealth Court of Appeals, they do consider that the fact that it was offensive rude language employed by appellant, that's the basis to conclude that the dismissal was valid. As appellant conceded, he has actively pursued the First Amendment claim. He's pursuing it before the Supreme Court of Puerto Rico, so he has had ample opportunity to litigate that claim in Commonwealth Court, although I can concede that the Intermediate Court of Appeals did not provide a detailed analysis applying the standard for a First Amendment claim. Well, they do center on the rules, the Code of Ethics, the personal rules, and they do consider that in light of the comments that he made and why they demean the image of the courts administration of the courts of justice in Puerto Rico. So they do, there's the underlying analysis that, you know, that we believe that makes the First Amendment claim unvalid. The First Amendment protects offensive speech, so the fact that they say that he engaged in offensive speech is not First Amendment analysis. It could be protected, but that needs to be, in this case, evaluated in the context of how these comments were made and how they were clearly linked to his work. So the employer, in this case, had an adequate reason for determination. Excuse me, but I think we're still at the point of trying to understand what the Court of Appeals ruled with respect to the First Amendment. I don't think we're into the merits yet, but I could be mistaken. And I didn't want to leave the Colorado River extension question quite yet. Okay. So let's say, hypothetically, that Colorado River does not apply, that the standards can't be met. Would there have been anything to prevent, to have prevented the district court from simply staying the action as a matter of comity, staying the federal court action as a matter of comity, even though Colorado River is not met? Well, as a matter of comity, we would think that given the fact that it was clear that the judgment of the Court of Appeals was, the case was submitted to the Court of Appeals, then a ruling, particularly on a preliminary injunction dealing with his probability of success in the First Amendment and the request for reinstatement, which is operative here because he's requesting reinstatement, would be derogatory of the Commonwealth Court proceedings. So comity considerations in general, aside from the judicial resources issue of duplicative litigation, would, I think, would have counseled in favor of a stay pending the judicial review proceedings that voluntarily the plaintiff initiated. Don't circuit cases suggest that a stay is the same as abstention, and that the same criteria need to be satisfied to stay attending the outcome of the state proceedings? Yeah, the court would have to apply an abstention doctrine, but I would think that weighted comity considerations would have counseled in favor of the stay in order to avoid particularly interlocutory decisions that would be inconsistent with each other, exposing the employer to a state court decision denying reinstatement. So what you're saying in response to my question is that you do have to meet Colorado River abstention standards or some other abstention doctrine just to get a stay? Yes. I guess Judge Howard had another question on Colorado River? No? Okay. Is the record here adequate to decide the First Amendment issue? Well, as a matter of law, we think that the contents of the termination letter has the substance of the comments that he made on Facebook. But I would say that there is not a developed record to consider the request for preliminary injunction on the merits because there is insufficient evidence of irreparable harm to the plaintiff. So although we could concede that the record is enough to conclude that he has no probability of success on the merits, I do think that the court has not been placed in a position to grant preliminary injunction relief at this stage, even if he is able to surpass the first hurdle, which is probability of success on the merits. So the record is adequate to decide the First Amendment question, but not the question of irreparable injury? I would say so. And precisely because the court never addressed the First Amendment legal issue, it would be in the best interest of the parties if the court is to acquire jurisdiction on the merits to allow the district court to make that decision. But we steadfastly argue that the plaintiff does not have probability of success on the merits. So even if the court considers the injunctive relief, it should be denied. But I do agree that for irreparable harm, there is no record in this case. Even on appeal, he does not argue that enough for irreparable harm. Why isn't satirical commentary on the mental condition, according to the plaintiff here, why isn't that kind of social commentary on the mental condition of the residents here in Puerto Rico a matter of public concern? It is in the context in which... Particularly when it's based upon fictionalized characters, which you don't contest that it's not based upon real-life people. Well, we don't have enough to say if those comments pertain to a particular person who went to the mediation office. Contrary to what Brother Counsel said in the termination letter, the court administration did not concede that this was fictional. What was imputed to him is that those were scenarios that he encountered in his employment, and it was linked to his employment by stating that he was employed in the general courts of justice. He employs his name in the blogs, in the posts. So the comments were made in a derogatory, discriminatory manner, using foul language. And even in the complaint, he concedes that he may have used offensive language. So that is enough for us to conclude, under the Georgian v. Carter case of the circuit, that those kinds of vulgar, offensive comments, to the very least, garner lesser protection. How is this no different from Saturday Night Live? Which, certainly in my opinion, is a matter of... expresses matters of public concern. Because here we have a supervisor of the mediation center issuing comments on information that he gathered on confidential terms from his employment, identifying himself as an employee of the courts of justice, using foul language. I'm trying to figure out how the Commonwealth could disprove his assertion that they are fictionalized vignettes. We don't currently have any basis on the record to do that, but what we can state is that he wasn't making any commentary on social issues, even criticizing the way courts handle these social issues in Puerto Rico. There is nothing of that sort in the record. So clearly he's not making a political or social stance on issues of social interest in Puerto Rico. He's merely using his position as an employee to mock persons who go to receive mediation services, all in the detriment of his employer and of the image of the employer. So even under the... There were no complaints here, right? I'm sorry? There were no complaints, public complaints, about these blogs. They were disrespectful, right? No, they weren't, but that isn't dispositive of the employer's criteria that this affected the image. It was a public page on Facebook, and he clearly identified himself as a mediator and as an employee of the government. So it was an adequate decision for the court's administration to find that having an employee issuing these types of remarks regarding situations that he was called upon to handle as part of his employment was sufficient to terminate him without violating his First Amendment rights. I see that my time is up. Thank you.